So we'll go ahead and proceed with the first case, which is Tyler v. City of Kingston. Thank you. Thank you. Good morning, Stephen Bergstein, for the plaintiff appellant in this free speech case. District court improperly granted Rule 12 dismissal in this limited public forum dispute. I want to start with the argument that this is content discrimination, and then I'll move on to the alternative argument in the event this court finds it's not content-based restriction on speech. Once the defendant allows expression on certain subjects, it needs to allow the plaintiffs and other individuals also to express themselves on the same subject. This is a city council meeting with a public comment section to discuss the city's policy on buying certain police equipment. The public comments would address that, and the plaintiff's signs would address that also. And based on this court's language, in limited public forum cases, hotel employees, the Kalash case, this is a good example of content-based restriction on speech, because the signs relate to the very matters that other people are allowed to address the city council on. I'm sorry, what's the standard for review here? What level of scrutiny are you arguing? Well, if it's content-based, then it's strict scrutiny. Compelling interest, narrowly tailored to satisfy government interest, that's a very high burden for a content-based restriction. Well, okay, but the speakers are allowed to speak. It's just a question of the method in which they use it, the method in which they convey their speech. Isn't that right? I don't know if the cases get that fine-tuned into distinguishing who can express themselves and who can't. They're not being denied entrance. No, they're allowed to enter. They can go, and there's no claim here that they wouldn't be allowed to make their views known. Well, they can make their views known through the public comment. That's sort of the ample, that's the alternative means angle, right? The problem with the alternative means angle is that this case's, this court's decisions on limited public forums do not show that alternative means is a dispositive factor in resolving a case like this. You consider it, but it's not enough. Your argument that this is content-based, I don't understand that claim. They're not saying that these individuals are not allowed to protest the truck purchase or anything of that sort. They're not saying anything about the substance of their speech. They're trying to restrict the manner in which it's done. So how is this content-based? This court has said once the government allows expressive activities of a certain genre, it may not selectively deny access for other activities of that genre. And this court said in Kalash v. Bridgeport. Right, but how is this relating to genre? If you're saying individuals are allowed to speak at these city council meetings on the topics of the meeting, that is the, I mean, I don't. Well, there's other language, Kalash v. Bridgeport. If defendant permits discussion of certain subjects at the meeting, it must allow others to express themselves on the same subject. So we're getting into subject matter. They're not denying others. They're not denying anybody the ability to express themselves. It's just the way they're expressing themselves. And there may be reasons for that. Well. They're arguing there are reasons for that. They need a reasonable basis to restrict what the plaintiffs want to do. If we're, that factors into. It's not the plaintiffs, right? It's anybody who comes in to speak. This regulation isn't directed at the plaintiffs. It's available to people at the other side of the issues. It applies to everybody, right? Correct. But this, what the plaintiffs had is pure speech, you know, signs, placards, posters. If we're talking about alternative means of expression that they can address the board at a public comment, that's not dispositive based on these cases. United for Peace and Justice, Connecticut State Federation of Teachers, you consider still the plaintiff's interest in constitution. Would we have a problem if people who believed in your clients brought their signs into here? No. It wouldn't work here. Why not? Well, because the city council meeting is an open meeting to entertain and address public policy where the public has an interest in being heard. Because the public is allowed to speak verbally, your view is that they're allowed to speak non-verbally with signs. Correct. The courtroom example doesn't work because this court can't make decisions based on what the public thinks if they show up. If I can just take Judge Walker's example, what if instead of allowing the general public to use signs, if the council who granted argument wanted to use signs, would we be able to say, well, no, you can't come up here with like a series of signs to make your argument? No, because there's no real interest in council using signs to promote their argument. I've seen people come here with props. How is that? I mean, people could say there's no interest in the public presenting their arguments with signs when they're granted permission to speak as an alternative. I think that would be incompatible with legitimate oral argument. I mean, the main question in limited public forum cases is whether it's a reasonable restriction based on compatibility with the nature of the forum. This forum is presumably, at least from what I gather, designed to encourage reflective dialogue, constant reasonably serious communications back and forth between the public and the officials, and that's different from – it seems to me that they could – why shouldn't they be able to – suppose they said, well, we're going to – we'd like to come in with – to make sure our voices are heard, we'd like to come in with a bullhorn. No, that wouldn't work because you're drowning people out with the plaintiffs. They're saying that you're disturbing the environment, making it more difficult for people to communicate, and you're saying – and I'm not questioning the good faith of your clients. What I'm questioning is whether or not some protestors might come in and disrupt things with signs. Okay, but this is a Rule 12, and we have no – there's no reason to believe that's going to happen. You can't speculate in a limited public forum case when you're restricting speech in a public meeting. The cases are clear on that unless it's just a common sense restriction on speech, but you can't just engage in guesswork, which is what the district court did. He said, well, we might have a picketing session. You don't know that's going to happen, and if it happens, you throw them out of the meeting. That's what the cases say. So if somebody disrupts, you kick them out, but if the plaintiffs are coming in silently holding a sign in the back of the room and they're not interfering with anything – they're not drowning anybody out, they're not speaking, they're not waving it, there's no vulgarities – How does this differ from an ordinary time, place, and manner restriction? Allow the protestors to use those signs outside, but just don't bring it into the room. Because this is a public meeting where they want to be heard directly with the city council. What Your Honor is suggesting is something that probably would be fleshed out in discovery. What's the best alternative means, if any, for them to express themselves? But you can't assume, just because there's a theoretical alternative means of speech based on the cases, that that disposes of the case on a Rule 12 motion. The cases are clear on that. Before you even get to the question of alternative means, there's the threshold question about the scope of the limited forum. And I want to make sure I understand your argument. Is your argument that because the council has said that during the designated 15-minute period or whatever it is at the end of the meeting, you may come to the microphone and address issues of concern to the council, that that opens a forum such that you could also stand in the back of the room with signs throughout the entire meeting, as long as the subject matter covers matters of interest? And isn't that – I think you're equating genre with subject matter, and I'm just trying to figure out where that comes from. That's our position, that if they're opening up the forum for speech on topic X, people can come in with visual messages on topic X if they do it quietly and respectfully. The language we're getting out of this is from hotel employees. It's from Kalash. You open it up for certain subjects. You must allow others to express themselves on the same subject, so long as they don't disrupt the meeting and so long as it's not incompatible. But it also talks about expressive activities of a certain genre, which sounds to me like it has nothing to do with subject. It has to do with mode of communication, and that's why I'm trying to figure out – it seems like you're taking a very narrow reading or a very broad reading of what it means to open a public forum. Based on what other cases are saying, which don't use the certain genre language, and they talk about certain subjects. And so this court hasn't been clear about what constitutes content discrimination, but our brief gets into this. The language generally suggests that if you're allowing people to speak on subject A, then others can't be turned away if they want to express themselves on subject A, too. Why would you have a restriction based on the means of speech on a Rule 12 when you assume that they're expressing themselves silently? Okay, but if the limited forum is 15 minutes at the end of the meeting, as I understand it, your position now is that people should be entitled to express themselves, albeit silently, through the duration of the meeting. That's language from a Ninth Circuit case where your rights to speak at a public meeting are not extinguished when the public comment period expires, and that's Norse. And they found no case that supports a contrary proposition if you're doing it silently. People come to public meetings, they wear political caps, T-shirts, jackets, pins. What's the difference? These may be larger than a T-shirt and a cap, but it's the same point. If somebody is sitting in the first row watching a public meeting and they're wearing a political T-shirt, you wouldn't throw them out based on the content of their T-shirt. But the idea then is it almost sounds as if you're suggesting that any silent form of speech cannot be restricted. Generally, yes. But in our case, it's a little easier because their silent form of speech is exactly the speech that the city council was entertaining that evening because it was on the agenda and they were entertaining commentary on public comment. If somebody came with an anti-war message or some off-topic question, I don't know. The example I just gave, is it any different from throwing somebody out of the meeting because you don't like their T-shirt? You don't like their jacket? You don't like their cap? Our primary point here is you can't speculate that what the plaintiffs want to do is going to inherently disrupt the meeting. And the case is— It's an inapt analysis, an analog, because these people wouldn't be thrown out of the meeting. They just couldn't bring their signs in. Well, they would be thrown out if they disrupted the meeting. But silently holding a sign is not disrupting anything. If they're standing in the back of the room and they're not doing anything, they're not saying anything— No, but they could still be present. And maybe they would be allowed to speak depending on what the rules are. If it's open to the public, then presumably it's members of the public. They'd be allowed to speak. That's the alternative means angle. But as I mentioned, that's not dispositive in a case like this. And it wouldn't be dispositive on a Rule 12 because you consider the plaintiff's constitutional interest in expression. And if the case is— The question I have is whether the mode of speaking is content-based rather than the nature of the speech because it's the same speech. And the difference we're talking about is the mode of speaking. So that's—I'm not sure I understand— But what is the government interest in restricting that particular mode of speech if it's not disruptive? But it is expressive. They don't have flashing lights. They're not making noises. There's no sounds. So really what's the difference? What is the government interest in restricting the manner of speech at a public meeting where they're entertaining public comment? That's the problem with the city's argument if they're going to make that argument. In order to get to testing the government's interest, you have to accept your premise that opening up a period for people to comment at the end of the meeting creates a forum for expression that extends beyond coming up to the microphone and making a comment at the end of the meeting. Not quite. That's—we have a content discrimination argument, and then we have an argument in the event the court finds that it's not discrimination based on content. If it's content neutral, then you get into reasonableness, and then you get into the issues of whether it's compatible with the forum, whether the government has a concrete reason to throw people out, whether the government has any interest in restricting the manner of speech or the topics. It's a different analysis if this court finds that it's not content-based. Okay. I think you have some rebuttal time. Thank you. Yes. Good morning. Michael Cook on behalf of the city of Kingston. As counsel suggested, it's not in dispute that this is a limited public forum and that there was no viewpoint discrimination. So the only dispute is whether that the speech was outside the category of uses that were anticipated by the Common Council meeting and the reason that the forum was open to the public. And I would submit, and as the district court held, that it was— You're saying it's content-based, at least that's what one of us argued. Right. It's content-based and, therefore, subject to item screening. And so why don't you respond to that? And if it is, what's the government interest? And if it isn't content-based, what's the government interest? Well, the purpose of the Common Council meeting or the council meeting was to enact legislation or act on behalf of the Kingston residents in this case. And in doing so, they allow the public to speak for that limited purpose of expressing their views on a particular issue. And it's in order to efficiently hold the meeting and in order to act in the best interest of the community, that public input is limited to speaking rather than holding signs. So the purpose of the meeting, which goes into the content-based, is not for a protest, not for a picketing session. It's to hear the views of those individuals. And the fact that there are signs, even though they may say a view, it's more of a catchphrase or a slogan. It doesn't necessarily let the council know the basis for those views. And in order to make an informed decision, which is what the role of the council is in these types of public meetings, is they need to know the basis of where these opinions come from. So the signs are not only distracting towards other visitors and other occupants of the meeting, but they're also distracting towards the council members as well. Because they may be more focused on a slogan or a catchphrase rather than what's coming from the public speaking. You're saying it's not consistent with the purpose of the meeting. Something that they're going to vote on in the best interest of the public, they want to make an informed decision in doing that. Can I just say, I mean, you're talking about that you refer to the signs as catchphrases and you're suggesting that they're not informative. But an individual could come up to the podium and say, you know, no tanks, no thanks, whatever. Is that not, I mean, it almost sounds like as if you're saying that it's too, that the reason that the signs are not sort of informative or serving the council's purpose is because they're catchphrases? Well, not necessarily. I'm just saying the reason that the forum was open to the public was for the public to speak as to their views on a particular subject matter. So that the council wants to, you know, has the right to hear from them in this forum. They want to hear from them rather than, you know, viewing it a sign or a slogan or that sort of thing. Is one of the issues about timing? In other words, I understand that plaintiffs want to hold the signs throughout the meeting, including beyond the period of time that was set aside for that input. If they said we don't want to hold our signs other than during the 15 minutes when you've set aside for this, would that be different? I don't believe so in this case because they have, again, opening the forum, the purpose for opening the forum up to the public was based on their agenda, which was noticed to the public, was to hear from the people, give them their time to speak, you know. And they do have a right to limit and restrict, you know, certain parts of that speech. And in doing it in the public sector, I mean, you know, as far as vocally letting your thoughts be known rather than through a sign, I don't think that's unreasonable. Okay, so let's assume we get past the first issue and we're dealing with the reasonableness question. Can you point me to a case where a court has resolved the reasonableness question on the pleadings, on the pleadings alone, rather than, you know, in a summary judgment posture or a trial on the merits posture? Right. I don't have any off the top of my head, Your Honor, if it's not referenced in my brief. But I think the reasonableness issue can be decided as a matter of law on the pleading stage. And the reason is, again, the purpose of these council meetings and opening up to the public is for an efficient discourse on what the agenda is for that time. So it is reasonable that if you allow all sorts of, you know, whether it be a protest, and in these plaintiffs, they acknowledge that they had protests in the past. So the fact of having signs, having posters leads towards, as the lower court mentioned, it could be a picketing session, which, you know, would be disruptive. But isn't this all the kind of reasoning that would be fleshed out in a summary judgment record? In other words, what you're saying now is sort of going beyond the flat pleadings. Well, what I'm saying is it's not unreasonable for the council to make that restriction prior to, you know, prior to it becoming true. Prior to it becoming true. In your justification, to follow up on what Judge Robinson just said, your justification, part of your justification is what could happen. As your adversary said, it's sort of speculation. These people were very benign. And I think for us to view this, to decide this really as a matter of law on the pleadings, we have to assume the most benign views, right? Because once it gets into more complex possibilities, then it seems to me that maybe we have to have a better record. And so the most benign use is, I suppose, that they come into the room and stand in the back of the room holding up those signs. And even that, you have to argue, is unreasonable. Right. And I believe that, and as the lower court mentioned, that the council has the prerogative or the right to restrict speech so that its purpose for that forum runs as efficiently and smoothly as possible. So I do think that the council has the right to restrict speech in that manner. That it's opening this up to the public for the limited purpose of the 15 minutes at the end of the meeting to voice your opinion. And that, you know, whether it does lead to violence or it leads to disruption or something down the road, you know, that could be an outcome of it. But I don't believe that that's determinative as to whether their justification is unreasonable. I take it that your argument is that this is not content-based and it's just rational basis, reasonableness that we're looking at. Correct. We're just looking at whether this was reasonable. And as was mentioned earlier, each of these individuals were allowed in the meeting. There was no restriction as to what they could vocally tell the council members. They had a means of conveying their message. And I think it is not unreasonable for this council. There were no restrictions on the number of people that could speak or anything like that, I take it. Correct. They could all speak. They could all speak. They all had a right to speak, and they all had a right to speak as to, you know, whatever they wanted to speak about with respect to that agenda. It was just during the public comment period. And just one reference, plaintiff's counsel mentioned the Norse case, and he talked about, you know, the limited public forum and not having the right to speak throughout the entire meeting. That case is distinguishable from what the Second Circuit has ruled, and it's distinguishable from this case as well. Because in the Norse case, the reason the city council wanted to restrict speech, and the distinction, though, is that they made certain individuals leave the meeting who, you know, voiced the thumbs down. And the individuals that voiced the thumbs up, they allowed to stay. So in that case, there was viewpoint discrimination. And so that was the reason that the public comment section was talked about there. In this case, we don't have that. There's no viewpoint. It's just whether it was reasonable to restrict the speech strictly to the spoken word, and I think that was reasonable. And I think based solely on the complaint, there's no discovery that's required. One question I have is whether there was public – were these sessions open to – they were open to the public, presumably, but were they also broadcast or transmitted in any way? Were there video streaming or anything of that sort to the point where what could be happening is there would be a protest to the larger public? Yeah, at least one of the meetings, there was – it was broadcast. Broadcast but visually as well? Correct. Correct. That's my understanding, Your Honor. Anything else? Thank you. Thank you. Let me remind this court what the Ninth Circuit said in Norris. It's very good language if we're talking about free speech in a city council meeting. What a city council may not do is close an open meeting by declaring the public has no First Amendment right whatsoever once the public comment period has closed. That's very good language if we're interested in public participation and community feedback in a respectful way that doesn't disrupt anything. There was a question about whether we can resolve this case on the pleadings. Not this case we can't. If reasonableness can be – can be decided on the pleadings if the restriction is obvious or has a common sense element to it. And that language originated with the Krishna consciousness case, Justice O'Connor's concurrence, where she said you can't restrict people from leafleting at an airport because there's nothing inherently disruptive about that. What the plaintiffs want to do in our case is even less disruptive than leafleting at an airport. You can't speculate about that. The context is totally different. I mean, in an airport, lots of things are happening. It's not a – it's not – doesn't afford to have the sort of direct seriousness of a town meeting directed on at particular subjects that are up for debate. An airport's an airport. An airport's almost like being on the street. People go to the airport for – well, they go to the airport for a reason, to catch their plane, and you would think, well, I don't want to be interrupted with some leafleter. But the Supreme Court said you can because it's not disruptive and it's not an obvious reason to restrict speech. We can't speculate. The district court said we don't want to have these meetings turn into a picketing session. We don't know that. There's no evidence that it's going to turn into a picketing session. And if we took that position in this case, no one's going to say we have reason to believe this is going to turn into a picketing session. It's completely speculative. But can you – can I just ask – I mean, you would accept that there are reasonable restrictions of some kind can be made in the context of these meetings. Of course. And so to the extent that the law does not require that necessarily that the restriction be the most reasonable restriction, it's – how is it that – I mean, this particular idea that these signs are disruptive, maybe they're not the most disruptive, and you could debate that. I mean, how is that just inherently an unreasonable restriction in the context of a meeting? Because then you have a blanket restriction against all nonviolent, silent display of expression. And there's cases – No, it's not that. It's a restriction on signs. Well, it's overbroad. This case isn't about buttons or the next level. It's overbroad. Here they're saying no signs. It's overbroad because not every sign is going to disrupt. And there are cases in our brief that if somebody does disrupt, you throw them out, which can happen at a city council meeting, town board meeting, school board. It happens. And so you don't anticipate there's going to be a problem. If there is a problem, you throw them out. But if somebody's standing quietly and not doing anything, where's the disruption? There is no – What if they had a rule that said we'll allow the signs in for – and all the signs can come in for two minutes before the meeting, and then you could take your signs out. And then if you want to stay, that's fine. Well, before you're thrown out, you read them the language from the Norse decision that I just read. You're not throwing them out. You're taking your signs out. And you say to them, well, there's no case that says you can restrict speech after the public comment period has ended. And you can't just say you can hold it up for two minutes because what's the governmental interest? And you're giving people a two-minute limit. What is the governmental interest if they're doing it quietly? There is no governmental interest. And this is an area where you want the public to be heard and to express themselves on a matter of public concern. It's the best way for them to communicate with the city council directly. Is it the best way? Why is a sign a better way of expressing than going up to a microphone and saying, here's what I think? What I meant was a city council meeting, addressing them either verbally or through symbolic speech or visual speech, is the most direct way to communicate with your elected officials compared to a letter to the editor. But if you're doing it silently, a two-minute limit, what's the governmental interest in that? What's the governmental interest in having a sign there that says no tax, no thanks, as opposed to having somebody come up to the podium and explain their views in more detail, give reasons? I don't think we can weigh the interest in somebody's speech based on how intelligent they are or how comprehensive they are. If somebody gets up to the podium and says, I'm against what you want to do. I'm done. I'm going to go sit down. And they say, you know what? Your comment is stricken from the record because it didn't tell us anything about why you oppose this. You have people showing up with these signs. You have a small critical mass from the community. People don't even go to city council meetings typically. But if you have seven or eight people show up with a sign that says we don't like this, you're conveying a message to the city council. Well, the public is against us to some extent. We should consider that. It's our job to consider that. We can ignore it, but we can't ‑‑ but we have to entertain it because the public, you know, has a right to be heard on these issues. And we need some public input when we make a decision on public policy. Council, can I just clarify one thing? You're relying on the Norse case for the conversation that follows if we reject your threshold argument as to the scope of the debate. Correct. You're not contending that Norse tells us anything about the impact of a city council opening public comment time. It's a question of the reasonableness of the ‑‑ this was the guy with the Nazi salute. Correct. Correct. Okay. Correct. Thank you. Thank you. Thank you both. We'll take the case under advisement.